# DARRELL LEE BRITT

## v.

# VIRGINIA EMPLOYMENT COMMISSION, et al.

No. 2162-91-3

Decided August 11, 1992

COUNSEL

Martin Wegbreit (Client Centered Legal Services of Southwest Virginia, Inc., on briefs), for appellant.

James W. Osborne, Assistant Attorney General (Mary Sue Terry, Attorney General; K. Marshall Cook, Deputy Attorney General; Richard L. Walton, Jr., Senior Assistant Attorney, on brief), for appellee, Virginia Employment Commission.

OPINION

ELDER, J.—Darrell Lee Britt appeals a decision of the Circuit Court of Buchanan County affirming a decision of the Virginia Employment Commission (VEC) that he was discharged from his employment for misconduct and thereby disqualified from unemployment compensation. We affirm the trial court's decision.

Appellant's initial application for unemployment compensation was approved by a deputy commissioner September 13, 1990. On October 17, 1990, a hearing examiner reversed the decision, and, on appeal, a special examiner upheld the reversal on the ground that appellant's discharge for misconduct disqualified him from unemployment compensation.

From November 28, 1989, until June 7, 1990, claimant worked as a security guard with Southwest Security, Inc. On the day he was discharged, another employee of Southwest Security informed a field supervisor that claimant appeared to be intoxicated. The supervisor went to claimant's work station, spoke for several minutes with him and another guard on duty at the time, and concluded that claimant was unsteady and impaired. She asked claimant if he had been drinking. According to the supervisor's testimony, claimant answered, "No, I have not been drinking. Uh, you can ask the Buchanan Coun — the Russell County Sheriff's Department if I've been drinking. I was stopped twice on my way up here tonight." The supervisor responded, "I'm not asking the Russell County Sheriff's Department anything. I'm asking you. When I ask a question, I want an answer." The supervisor recal-

led that claimant became very upset at this point and said, "You just go ahead and get somebody up here in my place tonight because I don't have to put up with your bullshit." The supervisor said, "That's fine. You go ahead and leave because you are terminated. You're fired."

Prior to this incident, claimant had received verbal warnings related to two other incidents of talking back to a supervisor. In the fall of 1989, claimant telephoned his supervisor about scheduling and became "angry and belligerent" during the course of the conversation. Appellant initiated the conversation when he called his supervisor's home and claimed to be calling from work. According to testimony of the supervisor,

> I told him that it was Officer Cox's shift, for him to just go home. And he told me to wait just a minute, that wasn't what I told him. So, I told him that's what I told him now. And that's when he got belligerent. . . . [H]e jumped on me, just because I had had a bad day, I wasn't supposed to take it out on him. He laughed at the fact that he thought he had gotten me out of bed. Uh, that's when I told him to go home and he laughed and said, "I am home." Uh, I told him that's where he should stay then. That's when he said he didn't care if I had a star or not, that didn't make a shit to him.

Appellant later received an "oral reprimand" for his conduct during this conversation.

In April 1990, or about three months prior to the incident that resulted in claimant's discharge, claimant reported to the wrong work station and became angry that he had not been notified of a schedule change. During the course of an exchange with a supervisor, he announced that he did not have to take her "bullshit." According to the supervisor involved in this incident, she identified herself to claimant as his supervisor. Claimant later apologized and received a second "oral reprimand."

Appellant asserts that the evidence was insufficient to support a finding that he was guilty of misconduct.

■ "[T]he findings of the Commission as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to ques-

tions of law." *Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc.*, 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987)(quoting Code § 60.1-71, now Code § 60.2-625). The commission found that appellant's misconduct justified his discharge and thereby disqualified him for benefits under Code § 60.2-618(2). "Whether an employee's behavior constitutes misconduct is a mixed question of law and fact reviewable by this court on appeal." *Israel v. Virginia Employment Comm'n*, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988) (citations omitted).

■ An employee is disqualified for unemployment benefits if he is "unemployed because he has been discharged for misconduct connected with his work." Code § 60.2-618(2).

[A]n employee is guilty of "misconduct connected with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a *willful* disregard of those interests and the duties and obligations he owes his employer.

*Branch v. Virginia Employment Comm'n*, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978). " '[A] continuing recurrence of . . . violations over a period of time clearly establishes . . . a deliberate and willful misconduct." *Robinson v. Hurst Harvey Oil, Inc.*, 12 Va. App. 936, 940, 407 S.E.2d 352, 354, (1991) (quoting 76 Am. Jur. 2d *Unemployment Compensation* § 52 (1975)).

Here, appellant was discharged following the third in a series of incidents of misconduct. He contends that, as a matter of law, neither of the first two incidents constituted misconduct and he was discharged for a single incident of insubordination.

With respect to the first incident, a telephone conversation between appellant and a supervisor, appellant argues that, because neither he nor his supervisor were at work at the time the call took place, the call could not have been "connected with" his work. We do not agree. The sole subject of the conversation was appellant's work schedule and appellant's anger over his schedule was the sole reason he became "belligerent" toward his supervisor. The evidence concerning this phone call was sufficient to support the commission's finding that appellant's behavior manifested "a *willful* disregard" of his employer's "legitimate business inter-

ests." *Branch*, 219 Va. at 611, 249 S.E.2d at 182.

With respect to the second incident, appellant concedes that he was on duty at the time but contends that, because the supervisor was not in uniform, he did not know who she was. He argues that, as a result, he could not have had "the intent to be insubordinate." The supervisor testified that she did in fact identify herself to appellant. The commission, not this Court, is charged with resolving questions of witness credibility. *Virginia Employment Comm'n v. Gantt*, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, *aff'd en banc*, 9 Va. App. 225, 385 S.E.2d 247 (1989).

Appellant also argues that the third incident represented an isolated act of insubordination which, in itself, was insufficient to support a finding of misconduct. The incident that triggered appellant's discharge was the third in a series of acts of insubordination. Following each of the first two incidents, he received a reprimand. He had thus received two warnings that his conduct related to his employment was an issue about which he should be concerned.

Because evidence established that appellant's behavior was recurrent, this case is distinguishable on its facts from *Kennedy's Piggly Wiggly Stores, Inc. v. Cooper*, 14 Va. App. 701, 419 S.E.2d 278 (1992), where the employer did not allege that the employee's behavior was recurrent. In *Piggly-Wiggly*, we held that a single, isolated incident involving offensive remarks by a store employee did not constitute misconduct where the remarks were "part of an isolated outburst" which occurred out of the presence of customers or other employees, where the remarks followed a private two and one-half hour meeting during which store officials repeatedly asked for the employee's resignation, where the employer at no point alleged that the employee's remarks disrupted or interfered with store business, and where the employee had no record of misconduct over a twenty-year period of employment. *Id.*

Appellant further contends that the trial court failed to consider evidence of mitigation. However, it is a question of fact for the commission "whether the employee's evidence sufficiently mitigates the . . . behavior so as to avoid disqualification because of the misconduct." *Gantt*, 7 Va. App. at 635, 376 S.E.2d at 811. Appellant presented evidence that, prior to the third incident, his

house had recently burned down, he had a sleepless night, and police had stopped him twice on the way to work. We will not second-guess the commission with respect to the relevance of this evidence nor will we hold that such evidence should allow appellant to avoid disqualification.

For the foregoing reasons, the decision of the trial court affirming the VEC is affirmed.

*Affirmed.*

Coleman, J., and Moon, J., concurred.