## CIRCUIT COURT OF THE CITY OF ROANOKE

T. E. Gardner Co., Inc.

v.

Virginia Employment
Commission
and David Deeds

September 15, 2014

Case No. CL14-647

By Judge Clifford R. Weckstein

When David Deeds, a carpenter, was fired by T. E. Gardner Co., Inc., [Gardner] he sought benefits under the Virginia Unemployment Compensation Act. Va. Code § 60.2-100 *et seq.* Gardner opposed the application, contending that Deeds was disqualified from receiving benefits because "he was discharged for misconduct connected with his work." Va. Code § 60.2-618. Gardner now seeks judicial review of the Virginia Employment Commission's decision that Deeds was not discharged for "misconduct." Va. Code § 60.2-625. Va. Code § 60.2-622(C) permits the VEC to designate a special examiner to hear appeals to the Commission. The special examiner's decision is deemed "the final decision of the Commission, subject to judicial review." *Id.* The decision under review in this case was rendered by a special examiner. Because the Commission (also known as the "VEC") did not err as a matter of law when it determined that Deeds was not discharged for misconduct, the court affirms its decision. *See Whitt v. Davis & Co.*, 20 Va. App. 432, 436, 457 S.E.2d 779, 781 (1995).

In reviewing VEC decisions, the court must "consider the evidence in the light most favorable to the finding by the Commission." *Francis v. Virginia Empl. Comm'n*, 59 Va. App. 137, 142, 717 S.E.2d 438, 440 (2011) (citations omitted). By statute, "the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Va. Code § 60.2-625.

As Gardner agreed at oral argument, there is no material dispute about what the facts are in this case. There are no allegations of fraud.

*Salient Facts*

From May 30, 2007, to August 16, 2013, Deeds worked as a carpenter for Gardner thirty to forty hours a week, as needed.

On February 5, 2013, Gardner issued Deeds a written warning about his inattentiveness at work. Gardner also cited incidents on May 13 and May 14, 2013, when Deeds forgot where he had put things, and, on August 7, 2013, when Deeds failed to follow directions in installing a "custom drip edge."

On August 16, 2013, Deeds, another worker, and Gardner's president (identified by the VEC as the employer's "owner") were working together at a job site. Deeds was instructed to install a type of formed flashing known as z-flashing while the president installed siding.

> There was a fence post which was placed close to the side of the building. The employer removed the fence post so that it would not interfere with the installation of the z-flashing and siding. . . .
>
> The post was attached to the concrete slab via bolts which were placed in the wet cement at the time the foundation was poured.
>
> Because the employer did not want to have to pour another foundation for the post, the employer instructed [Deeds] and his co-worker not to damage the bolts which protruded from the concrete. Damaging the bolts was not necessary for proper installation. . . .
>
> At the time the employer issued this instruction, the claimant was either distracted or not paying attention and he thus did not hear the instruction. When he was installing the z-flashing, he felt the bolts were in his way. He, therefore, cut the bolts without thinking about the work this would cause the employer.
>
> Upon discovering the claimant had cut the bolts, the employer confronted the claimant. Neither party used profanity or threatening language. However, the claimant initially loudly defended his decision to cut the bolts. The claimant subsequently changed his position, offering to repair the damage on his own time and at his own expense. The employer, nonetheless, discharged the claimant.

Record, at 38-39.

*"Misconduct"*

"An employee shall be disqualified from receiving unemployment benefits `if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work.' Va. Code § 60.2-618." *McNamara v. Virginia Empl. Comm'n*, 54 Va. App. 616, 626, 681 S.E.2d 67, 72 (2009).

Under "settled principles," an employee is guilty of "misconduct connected with his work . . . when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer," or "when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer." *Id.*, 54 Va. App. at 617, quoting *Branch v. Virginia Empl. Comm'n*, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978).

Gardner agrees that only the second prong of this "misconduct" test is at issue in this case.

The employer bears the burden of presenting a *prima facie* case of misconduct. If the employer does so, the burden shifts, and the employee has the obligation of proving "circumstances in mitigation of such conduct." *Branch*, 219 Va. at 611-12. Gardner contends that it met its burden and that the Commission erroneously failed to recognize that fact and erroneously failed to shift to Deeds the burden proving mitigation. I do not agree.

The Unemployment Compensation Act "as a whole . . . should be so interpreted as to effectuate [the] remedial purpose implicit in its enactment." *Ford Motor Co. v. Unemployment Compensation Comm'n*, 191 Va. 812, 824, 63 S.E.2d 28, 33-34 (1951). While recurring violations over a period of time may establish deliberate and willful misconduct:

> the term "misconduct" should not be so literally construed as to effect a forfeiture of benefits by an employee except in clear instances; rather, the term should be construed in a manner least favorable to working a forfeiture so as to minimize the penal character of the provision. . . . Although it certainly may justify an employee's discharge, behavior which is involuntary, unintentional, or the product of simple negligence does not rise to the level necessary to justify a denial of unemployment benefits.

*McNamara*, 54 Va. App. at 627. "Moreover, the record must establish that an employee's poor performance did not result merely from inexperience or an inability to perform the task assigned." *Whitt*, 20 Va. App. at 437.

It was within the VEC's competence to determine that the inattentiveness manifested by Deeds was the product of simple negligence, and the VEC did so, reasonably drawing inferences from the evidence and the facts as the Commission found them.

Gardner also contends that the Commission failed, in its fact-finding, to recognize the severity or seriousness of Deeds's insubordination. The short answer to that, of course, is that evidence supported the Commission's decision on the point. I am not free to reweigh the Commission's factual determination.

The Code provides that judicial review of VEC decisions shall be conducted in a summary manner on the earliest possible date. Va. Code § 60.2-625. Having done so, this court affirms the Commission's decision.

Gardner's objections to this decision are preserved for all of the reasons it has articulated, orally or in writing at any stage on the record of this proceeding. Duly certified copies of this opinion and order will be transmitted to Elizabeth B. Peay, Assistant Attorney General, counsel to the Commission, to Darren Delafield, counsel to T. E. Gardner Co., Inc., and to the Clerk of the Commission, who will please transmit a copy of this opinion and order to David Deeds. This is a final order, and the Clerk of the Circuit Court of the City of Roanoke will now remove the cause from the docket, and place it among matters ended. In accordance with the provisions of Rule 1:13, the Court dispenses with endorsements.